UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

COBALT MINING, LLC
and COBALT VENTURES, LLC                                          PLAINTIFFS

v.                                                          CIVIL ACTION NO. 3:07-CV-598-S

BANK OF AMERICA, N.A.                                               DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on the motion of the plaintiffs to remand (DN 6), and the motion of the plaintiffs for an award of attorney fees and costs incurred in opposing the defendant's removal of this action to this court (DN 16). For the reasons stated herein, the motion to remand will be granted and the motion for an award of attorney fees and costs will be denied.[1]

### BACKGROUND

The plaintiffs in this action, Cobalt Mining, LLC and Cobalt Ventures, LLC (collectively "Cobalt"), filed suit against Hollis Smith ("Smith"), a Kentucky citizen, and Bank of America, N.A. ("Bank of America"), a foreign entity doing business in Kentucky, in Jefferson Circuit Court. Cobalt alleges that Smith and Bank of America fraudulently lured it into investing into two of Smith's businesses by misrepresenting the value of those businesses. According to Cobalt, after being assured by both Smith and Bank of America that their valuations of the businesses were accurate, Cobalt and Smith formed Brooks Mining, LLC, to serve as a holding company for the businesses. Cobalt and Smith executed operating agreements for the holding company and the two businesses. Cobalt alleges that it later discovered that Smith and Bank of America had exaggerated the valuations of the businesses.

---

[1] Plaintiffs' also filed an emergency motion to expedite a ruling on the motion to remand (DN 7). This motion will be denied as moot. Defendant filed a motion for leave to file surreply (DN 20). This motion will be granted.

Cobalt filed suit in Jefferson Circuit Court on December 18, 2006. Cobalt's claims against Smith included fraud, negligent and intentional misrepresentation, securities fraud, and conversion.

Smith moved the state court to dismiss him from the action, contending that the state court lacked subject matter jurisdiction because the operating agreements for the holding company and the two businesses required Cobalt to arbitrate its claims against him. Cobalt opposed the motion to dismiss, arguing that all but its conversion claim stemmed from Smith's conduct before the creation of the operating agreements, and therefore, its conversion claim was the only claim subject to arbitration. Despite Cobalt's opposition, the state court determined that Cobalt's claims were subject to arbitration, and dismissed Smith from the action on September 28, 2007.

Cobalt filed a motion with the state court to alter, amend, or vacate its order dismissing Smith. A hearing was set for November 20, 2007. However, on October 30, 2007, Bank of America removed Cobalt's action against it on the basis of diversity. Cobalt Mining, LLC and Cobalt Ventures, LLC are both Kentucky limited liability companies with principal places of business in Kentucky. Bank of America is a national banking organization with its principal place of business in North Carolina. Bank of America has no branches in Kentucky, and Cobalt does not have any members that reside in North Carolina, or in any other state where Bank of America resides. Therefore, when Smith was dismissed from the state court action, complete diversity was created between Cobalt and Bank of America.

## DISCUSSION

### I. Motion to Remand

In order for a defendant to remove a case to federal court based upon diversity jurisdiction, there must be complete diversity of citizenship both at the time the case is commenced, and at the time the notice of removal is filed. *Jerome-Duncan, Inc., v. Auto-By-Tel, LLC,* 176 F.3d 904, 907 (6th Cir. 1999) (citing *Easley v. Pettibone Mich. Corp.,* 990 F.2d 905, 908 (6th Cir.1993)). However, if a plaintiff's

*voluntary* dismissal of a non-diverse defendant results in complete diversity among the parties, the remaining defendant may remove a case to federal court based upon diversity jurisdiction pursuant to 28 U.S.C. § 1446(b).[2]   In describing what is known as the "voluntary/involuntary rule" the Seventh Circuit Court of Appeals stated:

> Before 1949, when [§ 1446(b)] was added to the removal statute, the Supreme Court held that cases with non-diverse parties did not become removable just because a non-diverse defendant was dismissed from the case. Instead, the Court held that such suits were removable only if the plaintiff voluntarily dismissed a non-diverse defendant.
>
> \* \* \*
>
> The voluntary/involuntary rule... contributes to judicial economy. Removal following an involuntary dismissal may be only temporary: the plaintiff may appeal the dismissal in state court, and success on appeal would lead to the reinstatement of the non-diverse party, destroying federal jurisdiction and compelling remand to the state court. We are anxious to avoid this sort of yo-yo effect.
>
> \* \* \*
>
> Every court of appeals that has addressed the voluntary/involuntary rule has held that it survived the enactment of section 1446(b)... We will not buck the trend, nor will we rehash the legislative history. Suffice it to say that when Congress referred to "a case which is or has become removable," in section 1446(b), Congress apparently intended to incorporate the existing definition of "removable," a definition that included the voluntary/involuntary rule.

*Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71-72 (7th Cir. 1992) (citations omitted).

Cobalt argues that because it did not voluntarily dismiss Smith from the state court action, the voluntary/involuntary rule compels this court to remand the action back to Jefferson Circuit Court. Bank of America does not dispute the applicability of the voluntary/involuntary rule, or the fact that Smith was involuntarily dismissed from the state court action. Bank of America, however, argues that removal is

---

[2] 28 U.S.C. § 1446(b) provides, in relevant part:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of [diversity of citizenship] more than 1 year after commencement of the action.

proper based on two exceptions to the voluntary/involuntary rule: (1) the doctrine of fraudulent joinder and (2) the doctrine articulated in *Insigna v. LaBella*, 845 F.2d 249 (11th Cir. 1988), which distinguishes between dismissals based on jurisdictional grounds and dismissals based on the merits.

**A.  Fraudulent Joinder**

A defendant is fraudulently joined if there is "no reasonable basis for predicting that state law might impose liability on the facts involved." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994).  The removing party bears the burden of demonstrating fraudulent joinder.  *Id.*  "There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law..."  *Id.* (citation omitted).  Therefore, for purposes of determining whether Smith was fraudulently joined, the inquiry is whether the Cobalt had at least a colorable cause of action against Smith in a Kentucky state court.  *See Jerome-Duncan*, 176 F.3d at 907 (citing *Alexander* 13 F.3d at 949)).  Stated another way, the inquiry is whether there was any reasonable basis for predicting that Cobalt could prevail on its claims against Smith in a Kentucky state court.  Cobalt's motive in joining Smith is immaterial to this determination.  *See Alexander*, 13 F.3d at 949.

Bank of America's sole basis for alleging that Cobalt lacked a colorable cause of action against Smith is based on its claim that the arbitration provisions in the operating agreements clearly encompassed Cobalt's claims against Smith and required that those claims be submitted to arbitration. Essentially, what Bank of America argues is that fraudulent joinder should extend to situations where a plaintiff has a colorable cause of action against a non-diverse defendant but that plaintiff is precluded from bringing that cause of action in a judicial forum by an arbitration agreement.

Courts that have considered the issue of whether an arbitration agreement between a plaintiff and a non-diverse defendant renders the joinder of the non-diverse defendant fraudulent have uniformly concluded that the existence of an arbitration agreement "does not yield the conclusion that Plaintiff has

failed to state a colorable basis for a claim...." *Koetters v. Ernst & Young, LLP*, 2005 WL 1475533, *4 (E.D.Ky June 21, 2005); *see also Cure v. Toyota Motor Corp.*, 248 F.Supp.2d 594, 596-97 (S.D.Miss. 2003); *Briarpatch Ltd. v. Pate*, 81 F.Supp.2d 509, 517 (S.D.N.Y. 2000); *Frank v. American Gen. Fin., Inc.*, 23 F.Supp.2d 1346, 1358-49 (S.D.Ala 1998). The *Koetters* court provided five reasons to justify this conclusion:

> **First**, "the existence of an arbitration agreement between a plaintiff and a defendant does not necessarily mean that all of the plaintiff's claims against that defendant are arbitrable under the agreement." *Frank*, 23 F.Supp.2d at 1349.
>
> * * *
>
> **Second**, "[u]pholding any arbitration agreement is not automatic and should only be undertaken after careful consideration of the circumstances," and courts "must determine the enforceability of [an] arbitration agreement according to applicable state law." *Shadeh v. Circuit City Stores, Inc.*, 334 F.Supp.2d 938, 940, 941 (W.D.Ky.2004).
>
> * * *
>
> **Third**, "the mere existence of an arbitration agreement does not divest a court, state or federal, of jurisdiction." *Frank*, 23 F.Supp.2d at 1349 (noting that the United States Supreme Court "has never held that the FAA abrogates a state court's jurisdiction over an action which is governed by an arbitration agreement").
>
> * * *
>
> **Fourth**, the right to arbitrate is a right that the defendant may waive "intentionally or even negligently by failing to assert it timely or some other 'default in proceeding with such arbitration.' " *Id*. at 1350 (quoting 9 U.S.C. § 3).
>
> * * *
>
> **Finally**, even assuming an enforceable arbitration agreement exists, the FAA gives courts the express right only to stay "the action until such arbitration has been had in accordance with the terms of the agreement," and nothing in the FAA states that a court should dismiss the action. *See* 9 U.S.C. § 3.

2005 WL 1475533, at *5 (emphasis added).

Bank of America posits that these reasons are inapplicable to this case in that, in this case, the state court actually determined that Cobalt's claims were arbitrable and dismissed Smith from the action. Bank of America correctly points out that the state courts in neither *Koetters*, *Cure*, *Briarpatch*, nor *Frank* issued rulings as to the whether the claims presented by the plaintiffs were subject to arbitration.

The court does not find that this fact justifies a different result.  A number of these reasons remain applicable despite the state court's conclusion that Cobalt's claims were arbitrable.

Even assuming that the arbitration provisions in the operating agreements were enforceable and that Cobalt's claims were subject to the provisions, at the time Cobalt filed this action in state court, there was a reasonable basis to predict that Cobalt would prevail on its claims against Smith.  Had Smith not asserted his right to arbitrate, Cobalt's claims would have been resolved in the state court.  Bank of America does not contend that there is no reasonable basis to predict that Cobalt could not prevail on the merits of its claims.  Thus, this court is convinced that at the time Cobalt filed this action, Cobalt had colorable claims against Smith.  Even in light of the fact that Smith did timely assert his right to arbitrate, Smith may still, nonetheless, "default in proceeding with such arbitration" in any number of ways.  *See* 9 U.S.C. § 3.  Such "default" could constitute a waiver of Smith's right to arbitrate Cobalt's claims and require such claims to be resolved in a judicial forum.

Moreover, this court is not convinced that Smith was properly dismissed from this action.  The Federal Arbitration Act ("FAA") provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, **the court** in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties **stay the trial** of the action **until such arbitration has been had** in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).  The Kentucky Uniform Arbitration Act ("KUAA") similarly provides:

> **Any action** or proceeding involving an issue subject to arbitration **shall be stayed** if an order for arbitration or an application therefor has been made under this section; or if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.

KRS 417.060(4) (emphasis added).

Again, even assuming that the arbitration provisions in the operating agreements were enforceable and that Cobalt's claims were subject to the provisions, the state court was only expressly authorized to *stay* the action pending such arbitration.  Bank of America argues that the state court's dismissal of Smith from the action was an appropriate outcome.  We disagree.  While some courts have chosen to dismiss an action in favor of arbitration, particularly where all of the issues in the case are arbitrable, *see e.g. Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709 (4th Cir. 2001), others have indicated that the statute is mandatory and "bespeaks of no exceptions: if any or all claims are arbitrable, the case must be stayed."  *Harris v. Fiserv Solutions, Inc.*, 2006 WL 1083390, *3 (M.D.Tenn. 2006) (citing *Lloyd v. Hovensa, LLC*, 369 F.3d 263 (3d. Cir. 2004)).

The Sixth Circuit has noted that there exists authority to dismiss the case where all claims are subject to arbitration, *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000), but has not stated that this method is required, or even preferred.  *Harris*, 2006 WL 1083390, at *3.  In *Harris*, the defendants moved to dismiss or stay the proceedings against them on the basis that the plaintiff's claims were subject to arbitration.  The court found that the plaintiff's claims were subject to arbitration and noted that the statute states that the case *shall* be stayed.  The court noted that a possibility existed that the parties to the arbitration might seek assistance from the court during the arbitration proceedings.  Accordingly, the court stayed the action pending the completion of arbitration.  *Id.*;  *see also Eikona Technologies, Inc. v. Hitachi*, 2006 WL 1345810, *1 (N.D.Ohio May 16, 2006) (finding that, in the absence of binding authority stating the contrary, the statute does not authorize the dismissal of an action after requiring a plaintiff's claims be submitted to arbitration); *but see Hensel v. Cargill, Inc.*, 1999 WL 993775, *4 (6th Cir.Ohio Oct. 19, 1999) (stating that district court could dismiss an action after determining all claims must be submitted to arbitration).

In the absence of binding authority stating the contrary, the court finds the reasoning in *Harris* and *Eikona Technologies* persuasive. The plain language of the FAA, and the KUAA, requires an action be stayed pending completion of arbitration.[3] There are sound reasons for requiring such a result. A party required to arbitrate a claim may still seek assistance from the trial court for such things as disputes regarding the appointment of the arbitrator, to compel the attendance of a witness, to punish for contempt, or to seek relief in the form of a judgment. *See Harris*, 2006 WL 1083390, at *3 n.2 (citing *Lloyd*, 369 F.3d at 270). If the plaintiff's case has been dismissed rather than stayed, the parties will have to file a new action each time the court's assistance is required. *Id.* Dismissing the action in lieu of staying the proceedings would lead to unnecessary procedural complexity. *Id.* Merely because the state court did, in fact, dismiss Smith from the action does not require that this court ignore the plain language of the FAA and KUAA.

Insomuch as the authority before this court leads us to conclude that Cobalt had a colorable claim against Smith at the time it filed this action in the state court, and that Smith's dismissal from the state court action was improper, we cannot hold that the arbitration provisions in the operating agreement, or the fact that the state court dismissed Smith from the action, establishes that Smith was fraudulently joined in this action. Accordingly, the doctrine of fraudulent joinder does not operate to provide an exception to the voluntary/involuntary rule in this case.

---

[3] The KUAA is interpreted consistent with the FAA. *See Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004).

## B. Dismissal on Jurisdictional Grounds

Bank of America cites *Insinga v. LaBella*, 845 F.2d 249 (11th Cir. 1988), for the proposition that the voluntary/involuntary rule is inapplicable to a state court dismissal based on jurisdictional grounds. *See* 845 F.2d at 254. Even if this court were of the opinion that the state court's dismissal of Smith from this action were proper, we decline to adopt the *Insinga* exception to the voluntary/involuntary rule. As noted by numerous other courts "[t]he *Insinga* approach... fails to recognize an important reason for the voluntary/involuntary rule – that an involuntary dismissal may subsequently be appealed by the plaintiff to a state appellate court and reversed." *Gandy v. Crompton*, 55 F.Supp.2d 593, 596 (S.D.Miss. 1999) (citing *Arthur v. E.I. DuPont*, 798 F.Supp. 367, 369 (S.D.W.Va. 1992)). "[A] reversal on appeal 'would destroy the diversity of the parties, make any action of the federal court a nullity, and offend, thereby, traditional notions of judicial economy.'" *Id.* (citing *Arthur* 598 F.Supp. 368-69). This court agrees that the *Insigna* approach would undercut the purpose of the voluntary/involuntary rule.

## C. Conclusion

Because neither the doctrine of fraudulent joinder, nor the fact that the state court dismissed Smith from the action on jurisdictional grounds operates as an exception to the voluntary/involuntary rule in this case, this court must remand this action back to the Jefferson Circuit Court.[4]

## II. Motion for Attorney Fees and Costs

An "order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). District courts have the discretion to award such costs and expenses following removal when the award is "fair and equitable under all the circumstances." *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir.1993). A district court must award attorney fees "where the defendant's argument for removal was devoid of

---

[4] Because the voluntary/involuntary rule requires the court to remand this case, the court need not consider Cobalt's additional arguments in support of its motion to remand.

- 10 -

even fair support." *Bartholomew v. Town of Collierville,* 409 F.3d 684, 687.  The court does not find Bank of America's argument for removal to be devoid of fair support.  Therefore, the court does not find award of attorneys' fees and costs incurred as a result of Bank of America's removal to be appropriate in this case and declines to provide such an award to Cobalt.

    A separate order will be entered herein this date in accordance with this opinion.